(4 App. Div. 38.)

## PEOPLE v. FOX.

(Supreme Court, Appellate Division, First Department. April 17, 1896.)

OLEOMARGARINE—USE—PLACE OF MANUFACTURE.

> The agricultural law (Laws 1893, c. 388), art. 2, § 26, provides that no person shall produce or manufacture any compound in imitation of natural butter, or sell any compound produced "in violation of this section whether such * * * compound be made or produced in this state or elsewhere." Section 28 provides that no keeper of a restaurant shall serve therein, as food for his customers, "any compound made in violation of the provisions of this article." *Held*, that the phrase, "in violation of the provisions of this article," is used in the same sense in both sections, and that section 28 prohibits the serving of the condemned compound, whether manufactured in the state or elsewhere.

Appeal from court of general sessions, New York county.

William D. Fox was indicted for a violation of the agricultural law, in serving to a customer, as food, an imitation of natural butter. From a judgment convicting him of a misdemeanor, and from an order denying his motion for a new trial, defendant appeals. Affirmed.

The indictment charged the defendant with a violation of the provisions of article 2 of chapter 338 of the Laws of 1893, known as the "Agricultural Law," in serving to a customer, as food, a certain article and substance manufactured out of and from animal fats and animal oils, not produced from unadulterated milk or cream, in imitation and semblance of natural butter. The indictment averred that the article and substance in question was made and produced in the state of Kansas. The defendant demurred to the indictment on the grounds (1) that the grand jury by which said indictment was found had no legal authority to inquire into the crime charged, by reason of its not being within the local jurisdiction of the county of New York; (2) that the facts stated in said indictment do not constitute a crime; (3) that said indictment states that the article or substance referred to therein had been made and produced elsewhere than in the state of New York, to wit, in the state of Kansas, which matter, if true, constitutes a legal justification and excuse for the acts charged in said indictment, and a legal bar to the prosecution. The demurrer was overruled, and the defendant thereupon pleaded not guilty to the indictment. He was convicted upon the trial, and sentenced to pay a fine of $50.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Benjamin F. Tracy and Frank H. Platt, for the appellant.
John D. Lindsay, for the People.

BARRETT, J. The question here is as to the meaning of the words, "in violation of the provisions of this article," contained in

section 28 of the agricultural law (Laws 1893, c. 338). The section, in substance, provides that no restaurant keeper shall serve as food for his customers, or use for cooking purposes, any article or substance made "in violation of the provisions of this article," namely, article second, relating to dairy products. The appellant insists that the words in question are limited to a legally punishable violation. The respondents contend that they embrace any article made contrary to the provisions of the act. We agree with the latter construction. The act defines its own intent. Section 26 is prefaced with this headline, "Manufacture and Sale of Imitation Butter Prohibited." Section 28 commences "Prohibited Articles not to be Furnished." Section 36 reads as follows:

"Object and Intent of This Article. This article and each section thereof are declared to be enacted to prevent deception in the sale of dairy products, and to preserve the public .health, which is endangered by the manufacture, sale and use of the articles or substances herein regulated or prohibited."

Thus we have a distinct legislative declaration that the substance in question is deleterious, and that the object of the prohibition is to preserve the public health. The words were meant to cover the intent. "Made in violation of the provisions of this article" was simply a concrete expression meaning "made in the manner condemned by this article." To limit it to such making as could be punished by the courts would destroy the entire system. "Such construction of a statute," said Earl, J., in Pierson v. People, 79 N. Y. 433, "should be adopted as appears most reasonable, and best suited to accomplish the objects of the statute." The appellant insists upon a construction which would enable the proprietor of every hotel and restaurant in this state to serve with impunity what the legislature declares to be a deleterious substance, and thus, according to the legislative judgment, to jeopardize the public health. All the proprietor has to do, upon that construction, is to secure the condemned article elsewhere. If it is manufactured upon the other side of the boundary line of this state, he can injure the public health here with impunity. This construction is unreasonable. The prohibited article is none the less made in violation of the provisions of the agricultural law because made where those provisions have no binding force. "Violation" here means practical nonconformity, as well as punishable transgression. It is urged that section 26 favors the appellant's contention, because there also the sale of any such article "in violation of the provisions of this section" is forbidden, while the prohibition is coupled with the phrase (which follows), "whether such article, substance or compound shall be made or produced in this state or elsewhere." The appellant contends that the absence of the latter phrase in section 28 is significant. But still the question is as to the meaning, even in section 26, of the words, "in violation of the provisions of this section." Unless they mean what we have suggested, namely, nonconformity to the manufacturing regulations of the section, the words which follow, and which are supposed to be significant,

have no force and are simply contradictory. The legislature surely never meant to embody in a single sentence such a provision as this: That no person shall sell any article made in this state in violation of the provisions of this section, whether such article be made in this state or out of this state. What the legislature really intended was to accentuate its previous meaning. The purpose was to prohibit the sale of goods of the condemned class. Lest the expression, "made in violation of the provisions of this section," should possibly be considered ambiguous, the words of legislative construction, "whether made or produced in this state or elsewhere," were added. Having used those words, not to amplify or extend the prohibition, but to construe and emphasize it, it was unnecessary to repeat such words of construction in the following twenty-eighth section. They were really unnecessary in section 26. They were equally unnecessary in section 28. Without them there was no genuine ambiguity. The violation contemplated was clear enough, namely, the production or sale or use of goods which the legislature deemed deleterious. But whatever possible doubt there might have been was set at rest by the words which we have called "words of construction." The expression, "in violation of the provisions," etc., has precisely the same meaning in the one section as the other. The words themselves are the same. They mean the same thing without any words of construction, and they mean it none the less with such words of construction.

We have no doubt that the defendant was properly convicted, and that the judgment should be affirmed. All concur.