Island Coal Co. v. Swaggerty.

---

## ISLAND COAL COMPANY *v.* SWAGGERTY.

[No. 19,643.   Filed January 16, 1901.   Rehearing denied January 13, 1903.]

NEGLIGENCE.—*Assumption of Risk.*—*Violation of Statutory Duty.*—*Master and Servant.*—The doctrine of assumption of risk does not apply to a case where the injury occurs by reason of the negligent non-observance by the master of a positive and fixed duty enjoined by statute. *pp. 667.*

MASTER AND SERVANT.—*Fellow Servant.*—*Mines.*—A mine owner is not relieved under the fellow servant rule from liability for an injury sustained by a mine employe because of the failure of the mine boss, who represented the owner in the mine, to stop the elevator in its descent by pulling the cord attached to the whistle valve. *pp. 667-669.*

NEGLIGENCE.—*When Question of Fact.*—Whether a mine boss who stood at the bottom of an elevator shaft at the edge of a pit or sump which plaintiff was engaged in cleaning out was guilty of negligence in failing to signal the engineer to stop the elevator

in its descent was a question of fact for the determination of the jury. *pp. 669-671.*

From Daviess Circuit Court; *D. J. Hefron,* Judge.

Action by William F. Swaggerty against the Island Coal Company for personal injuries. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*C. E. Barrett, C. G. Gardiner* and *W. R. Gardiner,* for appellant.

*C. E. Davis* and *W. V. Moffett,* for appellee.

BAKER, J.—This cause has been transferred here because the Appellate Court was equally divided on the questions involved. *Island Coal Co.* v. *Swaggerty,* 27 Ind. App. 697.

Appellee had judgment against appellant for damages for personal injuries, the proximate cause of which was alleged to be appellant's failure to comply with certain provisions of the statutes in relation to the operation of coal mines. The assignments challenge the sufficiency of the complaint and the correctness of the ruling denying a new trial. The controlling questions relate to assumption of risk and contributory negligence, and were decided adversely to appellant's contention in *Davis Coal Co.* v. *Polland,* 158 Ind. 607.

We find no error in the record. Judgment affirmed.

## ON PETITION FOR REHEARING.

GILLETT, J.—Complaint is made that in the opinion heretofore rendered in this cause it was held that all of the questions presented were ruled by the case of *Davis Coal Co.* v. *Polland,* 158 Ind. 607. Upon a reëxamination of the principal brief of appellant it appears that the predominant proposition urged was that appellee had assumed the risk, but, after a full consideration of the matter, we have concluded to review the particular points on which a rehearing is sought.

Island Coal Co. v. Swaggerty.

The action is for a personal injury sustained by appellee from a descending elevator while employed in the coal mine of appellant, owing to the alleged negligence of the latter. The case was tried upon the second paragraph of the amended complaint, and the first question presented is as to the sufficiency of said paragraph. According to said paragraph, the appellee received his injury while engaged in cleaning out a sump or pit, extending to a depth of six feet below the lower surface of the mine, that was constructed for the purpose of so receiving the elevator operated in the shaft that the floor of said elevator might rest on a level with the surface of the mine when the elevator was at the bottom of the mine.

By the second paragraph of the amended complaint it is sought to charge appellant with negligence on two grounds: (1) In failing to maintain the statutory code of signals relative to the use of elevators in coal mines; and (2) because of the omission of the mine boss, who represented the appellant in all things in the management of the interior of said mine, in failing to stop the elevator in its descent by the pulling of the cord attached to the whistle valve, as it is alleged that he might have done, as he stood on the edge of the sump in which he had ordered appellee to work, and saw the elevator descending towards him. The question as to whether the last stated cause of negligence, instead of both, appears to have been the proximate cause of the injury is not urged, and therefore we do not consider it. As the case is presented in argument on the motion for a rehearing, we feel at liberty to treat the complaint as charging both grounds of negligence.

There is no merit in the claim that the complaint shows on its face that appellee was guilty of contributory negligence. The complaint alleges that he was injured without any negligence on his part, and the specific facts averred are not sufficient to overcome the force of such general averment.

In respect to the first ground of negligence above stated, the complaint is not open to the objection of appellant's counsel that appellee assumed the risk. The complaint discloses that appellant had omitted to establish the code of signals required by statute, §7470 Burns 1901, and had negligently caused the movements of said elevator, in respect to the stopping and lowering of the same, to be governed by the same signal,—a single blast of the whistle,—and that by reason of a misapprehension by the engineer of the purpose of such signal in the particular instance he lowered the elevator into the sump, instead of stopping the same, thereby injuring appellee.

The claim that under the first charge of negligence appellee assumed the risk is shown to be erroneous by the late case of *Davis Coal Co.* v. *Polland,* 158 Ind. 607. The doctrine of assumption of risk does not apply to a case where the injury occurs by reason of the negligent nonobservance of a positive and fixed duty enjoined by a statute. The same proposition meets most of the objections to instructions given and refused. As to the second charge of negligence, the complaint states a cause of action.

It is further objected, however, that certain instructions given, that were founded on said omission of the mine boss, were improper. The complaint is not based on the employer's liability act. Appellant's counsel objects to the instructions mentioned on the ground that the mine boss was a fellow servant of appellee. If this be true, appellee must be held to have assumed the risk of the negligence of a fellow servant, in the absence of any claim that the master had knowledge that he was negligent. It is undoubtedly the law that mere difference in rank between the servant injured and the servant whose negligent omission occasions the injury does not make the latter a vice principal. *Indiana Car Co.* v. *Parker,* 100 Ind. 181; *Krueger* v. *Louisville, etc., R. Co.,* 111 Ind. 51; *Pennsylvania Co.* v. *Whit-*

*comb,* 111 Ind. 212; *Justice* v. *Pennsylvania Co.,* 130 Ind. 321; *New Pittsburgh, etc., Co.* v. *Peterson,* 136 Ind. 398, 43 Am. St. 327; *Bedford Belt R. Co.* v. *Brown,* 142 Ind. 659; *Robertson* v. *Chicago, etc., R. Co.,* 146 Ind. 486; *Hodges* v. *Standard Wheel Co.,* 152 Ind. 680.

The master's duty is to use ordinary care to provide his servant with a safe working place, with safe machinery and appliances. If the master authorizes an agent to perform such duties, the agent, whatever his rank, stands in the place of the master. *Indiana Car Co.* v. *Parker, supra; Louisville, etc., R. Co.* v. *Graham,* 124 Ind. 89; *Ohio, etc., R. Co.* v. *Pearcy,* 128 Ind. 197. The duty of the master is a continuing one. *Indiana Car Co.* v. *Parker, supra.* The principle of liability is not confined to negligent orders. *Russ* v. *Wabash, etc., R. Co.,* 112 Mo. 45, 52, 20 S. W. 472, 18 L. R. A. 823. The master's duty requires performance. Until the agent selected by the master acts up to the limit of the duty of his master to act, the master's duty is not done. *McElligott* v. *Randolph,* 61 Conn. 157, 22 Atl. 1004, 29 Am. St. 181. In Shearman & Refield, Neg. (5th ed.), §233, it is said: "The value of any general principle of law depends mainly upon the method of its application. And while the principle heretofore stated has met with very general acceptance, its value has been greatly reduced in Maine, Massachusetts, Rhode Island, New York, and Maryland, by the narrow spirit in which the personal duties of masters have been defined; while in nearly all other courts its value has been greatly increased, by putting in the forefront of those duties the duty of general superintendence, including direction, control, watchfulness, warning, instruction and inspection. The test to be applied in each case, under this principle, is to inquire: What would have been the duty of the master had he been personally present? To whom did he delegate that duty, he being absent? That delegate, whether he be high or low, should be deemed, with respect to that duty, a vice prin-

cipal. Foremost among the powers of a master, as already pointed out, is the power of giving orders. Foremost among his duties is that of general superintendence. He is equally responsible, where he deputes to another the duty of giving orders which he ought to give himself, if present; and if he deputes his power and duty of superintendence, he is responsible for the failure of his deputy to properly superintend. * * * The master's responsibility for the acts of his vice principal is to be determined, not merely by the character of the act which the latter performs, but also by the character of that which he *fails to perform.* If, therefore, a vice principal, invested with the power and duty of superintendence, negligently permits any act to be done which it would be the duty of the master, if present, to prevent, the master is responsible to a servant injured thereby, simply because of the failure of his superintending vice principal to prevent it being done. And the master is none the less liable, if the negligent act is done by the vice principal himself. So the master is responsible for the failure of a superintending servant to give such due warnings of dangers as the master should have given, if present. These doctrines are fully sustained by the decisions of the U. S. Supreme Court, and by those of the highest courts in Vermont, Connecticut, Delaware, Virginia, West Virginia, North and South Carolina, Georgia, Alabama, Louisiana, Texas, Arkansas, Tennessee, Kentucky, Ohio, Indiana, Illinois, Missouri, Minnesota, Kansas, Nebraska, Colorado, Montana, Utah, Oregon, Washington and Wyoming."

The mine boss was the representative of the master in the mine, and we think it clear that if the master had been an individual, and had been in the situation of the mine boss, it would have been his duty, in the discharge of his obligation, to use ordinary care to keep the place into which appellee had been ordered safe, not to have omitted such reasonable effort as he could have made to prevent the injury from the descending elevator that the evidence tends

to show that he knew threatened said appellee. In other words, we think that appellee was entitled to take the verdict of a jury upon the question as to whether the mine boss should have signaled the engineer to stop the elevator.

A case of this kind is to be broadly distinguished from a case like *Kerner* v. *Baltimore, etc., R. Co.,* 149 Ind. 21, where the foreman was engaged in assisting the servant when the injury happened. In such a case he would then be acting in his capacity as a fellow servant, while here the duty that the mine boss owed was the duty of his principal.

The case of *Gerrish* v. *New Haven Ice Co.,* 63 Conn. 9, 27 Atl. 235, is a case to a considerable extent like this. In that case the plaintiff therein had been ordered to adjust some machinery that had become out of order, at a time when the engine was stopped for that purpose. The plaintiff's position, while adjusting said machinery, would become one of great danger if the engine should be started. The company had a rule, known to all its employees, that it was the duty of the superintendent under such circumstances to stand in a certain place, where he could oversee the work, and have in reach a bell-cord by which he could signal the engineer when to stop and when to start the engine, and that when the engine was stopped for such purpose the engineer should be personally notified and should not start the engine until being personally notified to do so. At the time in question the superintendent neglected to notify the engineer that said plaintiff was so adjusting said machinery, and left the place to get a needed appliance. The bell rung, as the jury specially found by reason of a piece of floating ice that had caused the disarrangement of the machinery being thrown down by the plaintiff and striking the bell-cord, and, as a result, the engineer started the engine, and the plaintiff was seriously injured. The defendant was held liable, principally on the ground that it had violated its own rule; but the court also held that it was liable on general grounds, presumably because the superintendent

had without any precaution left the plaintiff in a situation of peril. In disposing of this branch of the case, the court said: "The defendant is a corporation. Mr. Bishop is, and was, its superintendent and the general manager of the business. He must be presumed to have had all the powers which his position implies. On the day that the plaintiff was injured he was present and in general charge of the work there being done. He was there undertaking to perform duties which it was the business of the master to perform. If only the ordinary rules of law applicable to the relation of master and servant are contemplated, it is obvious that the superior court did not require anything of the defendant which the law does not require, and that there is no error in the judgment." The evidence supports the verdict. The second charge of negligence at least was sufficiently made out to authorize appellee to have the question presented to the jury.

We have now considered all of the grounds on which a rehearing is sought, and, after doing so, we are of opinion that our original judgment of affirmance was right.

The petition for a rehearing is overruled.